## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re : | Chapter 11 |
| RTI HOLDING COMPANY, LLC, *et al.*,[1] | Case No. 20-12456 (JTD) |
| Debtors. | (Jointly Administered) |
| | |
| RUBY TUESDAY, INC., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 20-51045 (JTD) |
| EVERGREEN DEVELOPMENT COMPANY, L.L.C., | |
| Defendant. | |

### EVERGREEN DEVELOPMENT COMPANY, L.L.C.'S BRIEF IN RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING FIRST CLAIM FOR RELIEF ASSERTED IN COMPLAINT FOR DECLARATORY RELIEF AND IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

Dated:  January 15, 2021
Wilmington, Delaware

Leslie Heilman (DE Bar No. 4716)
Laurel D. Roglen, Esq. (DE Bar No. 5759)
Brian D. Huben (CA Bar No. 134354)
Theodore J. Hartl (CO Bar No. 32409)
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone:  (302) 252-54465

---

[1]  The Debtors, along with the last four digits of each Debtor's tax identification number, are: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................................ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING................................ 1

SUMMARY OF ARGUMENT ................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT AND AUTHORITY ............................................................................................. 6

    A.    The Force Majeure Provision of the Lease Does Not and Cannot Apply to
    Abate Rent .......................................................................................................... 8

        1.    Neither the COVID-19 Pandemic Nor Any Government
        Regulation Has Prevented the Debtor's Performance Under the
        Lease as a Matter of Fact .......................................................................... 9

        2.    The Debtor's Business Operations and Chosen Business Model
        Are Entirely Within the Debtor's Control and Are at Least a
        Contributing Cause, if not the Proximate Cause of the Debtor's
        Lost Revenue ........................................................................................ 11

    B.    The Debtor and Evergreen Mutually Waived Any Rights Premised on
    Operation of a Business Under the Lease and the Settlement Agreement ........... 11

    C.    Even if the COVID-19 Pandemic Constitutes an "Act of God" Under the
    Lease, It Has Not Prevented Debtor's Performance, and it is Not the Sole
    or Proximate Cause of Debtor's Business Distress................................................ 13

    D.    Cases Cited By the Debtor Applying Force Majeure Are Inapposite................... 13

    E.    Wholesale "Abatement" of Rent Paid and Payable Under the Evergreen
    Lease is Contrary to Section 365, Applicable Law, and the Lease
    Language.......................................................................................................... 16

CONCLUSION........................................................................................................................ 18

CERTIFICATE OF SERVICE .......................................................................................................

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allied Sys. Holdings*,
　556 B.R. 581 (D. Del. 2016) ................................................................................7

*Ames v. American Nat. Bank*,
　163 Va. 1, 38, 176 S.E. 204, 216 (1934) ............................................................8

*Anderson v. Liberty Lobby, Inc*.,
　477 U.S. 242 (1986) ............................................................................................7

*Bmg Rights Mgmt. (US) LLC v. Cox Communs., Inc*.,
　199 F. Supp. 3d 958 (E.D. Va. 2016) ................................................................9

*Brand Distributors, Inc. v. Insurance Co. of N. Am*.,
　532 F.2d 352 (4th Cir. 1976) ........................................................................8, 12

*Cab Bedford LLC v. Equinox Bedford Ave, Inc*.,
　2020 N.Y. Misc. LEXIS 10861 (N.Y. Sup. Ct. Dec. 22, 2020) ........................15

*Carpenter v. Gate City*,
　40 S.E.2d 268 (Va. 1946) ..................................................................................8

*In re CEC Entertainment, Inc.*,
　2020 Bankr. LEXIS 3493 (Bankr. S.D. Tex. Dec. 14, 2020) ......................14, 15

*In re CEC Entertainment, Inc.*,
　Case No. 20-33163 (Bankr. S.D. Tex.) ........................................................14, 15

*Coker Int'l, Inc. v. Burlington Industries, Inc*.,
　No. 90-2492, 1991 U.S. App. LEXIS 11794 (4th Cir. June 11, 1991) ..........16, 17

*Elkton Associates v. Shelco Inc. (Matter of Shelco)*,
　107 B.R. 483 (Bankr. D. Del. 1989) ..................................................................16

*Employers Commercial Union Ins. Co. of America v. Great American Ins. Co*.,
　200 S.E. 2d 560 (Va. 1973) ..............................................................................12

*In re Fresh-G Rest. Intermediate Holding, LLC*,
　580 B.R. 103 (Bankr. D. Del. 2017) ..................................................................16

*Gordonsville Energy, L.P. v, Virginia Elec. & Power Co*.,
　512 S.E. 2d 811 (Va. 1999) ..............................................................................12

*Gray v. York Newspapers, Inc.*,
   957 F.2d 1070 (3d Cir. 1992)............................................................................7

*Great Falls Hardware Co. of Reston v. South Lakes Village Center Assocs., L.P.*,
   238 Va. 123, 380 S.E.2d 642, 5 Va. Law Rep. 2832 (1989) ......................................8

*Haass & Broyles Excavators, Inc. v. Ramey Bros Excavating*,
   355 S.E.2d 312 (Va. 1987)...........................................................................11

*Harris v. Woodrum*,
   350 S.E.2d 667 (Va. Ct. App. 1986) .................................................................8

*In re Hitz Rest, Grp.*,
   616 B.R. 374 (Bankr. N.D. Ill, 2020) ............................................................13, 14

*ITS Soho LLC v. 598 Broadway Realty Assoc. Inc.*,
   2020 N.Y. Misc. LEXIS 10856 (N.Y. Sup. Ct. Dec. 22, 2020) ...............................15

*J. W. Fortune, Inc. v. McLean Square Assocs., G.P. (In re J. W. Fortune, Inc.)*,
   No. 98-115, 1999 U.S. App. LEXIS 2397 (4th Cir. Feb. 17, 1999) ...........................8

*Langham-Hill Petroleum, Inc. v. Southern Fuels Co.*,
   813 F.2d 1327 (4th Cir. 1987) ........................................................................8

*In re Montgomery Ward Holding Corp.*,
   268 F.3d 205 (3d Cir. 2001).........................................................................16

*Northern Indiana Public Service Company v. Carbon County Coal Co.*,
   799 F.2d 265 (7th Cir. 1986) ........................................................................8

*In re Pac-W. Telecomm, Inc.*,
   377 B.R. 119 (Bankr. D. Del. 2007) ...............................................................16

*Rastek Constr. & Dev. Corp. v. Gen. Land Commer. Co., LLC*,
   806 S.E.2d 740 (Va. 2017)..........................................................................11

*Saldana v. Kmart Corp.*,
   260 F.3d 228, 43 V.I. 361 (3d Cir. 2001) ..........................................................7

*Standard Pac. of the Carolinas, LLC v. Amerisure Ins. Co.*,
   500 Fed. Appx. 237 (4th Cir. 2012)..................................................................9

*Matter of Superior Toy and Mfg. Co., Inc.*,
   78 F.3d 1169 (7th Cir. 1996) ........................................................................17

*Virginia Elec. & Power Co. v. N. Va. Reg'l Park Auth.*,
   618 S.E.2d 323 (Va. 2005)...........................................................................8

*Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv.*,
    595 S.E. 2d 1 (Va. 2004) ...........................................................................................12

*In re Wash. Capital Aviation & Leasing*,
    156 B.R. 167 (Bankr. E.D. Va. 1993) ...................................................................17

*In re Westinghouse Elec. Corp. Uranium Contracts Litigation*,
    517 F. Supp. 440 (E.D. Va. 1981) ...................................................................12, 13

*World-Wide Rights Ltd. Partnership v. Combe Inc.*,
    955 F.2d 242 (4th Cir. 1992) ...................................................................................7

**Statutes**

11 U.S.C. § 365 ...............................................................................................3, 16, 18

11 U.S.C. § 365(b)(1)(A) and (B) .....................................................................................16

11 U.S.C. § 365(d)(3) ........................................................................................................16

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ............................................................................9

Black's Law Dictionary 1252 (9th ed. 2009) .....................................................................9

Federal Rule of Bankruptcy Procedure 7056 .....................................................................6

Federal Rule of Civil Procedure 56 ....................................................................................6

Defendant Evergreen Development Company, L.L.C. ("Evergreen"), by and through its undersigned counsel, respectfully submits this Brief in Response to Motion for Partial Summary Judgment on First Claim for Relief Asserted in Complaint for Declaratory Relief and in Support of Cross Motion for Summary Judgment (this "Response"), states as follows

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On December 14, 2020, the Debtor commenced this adversary proceeding through its *Complaint for Declaratory Relief* [D.I. 1] (the "Complaint"). The Complaint followed this Court's entry of the *Scheduling Order RE: Abatement Litigation* on December 9, 2020, *In re RTI Holdings, Inc.*, Case No. 20-12456 [D.I. 689]. On December 21, 2020, the Debtor filed *Debtor's Motion for Partial Summary Judgment Regarding First Claim for Relief Asserted In Complaint for Declaratory Relief*, [D.I. 4] (the "Motion"), along with *Debtor's Opening Brief in Support of Motion for Partial Summary Judgment Regarding First Claim for Relief Asserted In Complaint for Declaratory Relief* [D.I. 5] (the "Opening Brief").

Contemporaneously with this Response, Evergreen has filed its *Answer, Affirmative Defenses, and Counterclaims in Response to the Complaint*, [D.I. 9]. In its first counterclaim for relief, Evergreen seeks entry of judgment declaring that the force majeure clause of the Lease cannot apply under the undisputed facts, and that the Debtor waived any rights in the Lease associated with operating a business from the leased premises.

This Response is supported by, among other things, the Declaration of Robert Kubicki, attached hereto as Exhibit 1 (the "Kubicki Declaration").

## SUMMARY OF ARGUMENT

1.     Evergreen Development Company, L.L.C. ("Evergreen") does not dispute that the COVID-19 pandemic affecting millions of people around the world, and the ensuing actions of

governmental units to safeguard the health and safety of the general public, have had devastating impacts on individuals and businesses for the better part of the last year.  No one is immune from the fallout.

2.      Despite the breadth, scope, and severity of the pandemic and attendant government orders, however, this Court cannot expand the scope of the parties' written lease to afford Ruby Tuesday, Inc. (the "Debtor") relief that is expressly barred under the plain language of the Lease (defined herein) and the undisputed facts.  Evergreen is sympathetic to the Debtor's plight, but the Deed of Lease at issue here with Evergreen (the "Lease"), title 11 of the United States Code (the "Bankruptcy Code"), and applicable nonbankruptcy law, prohibit the wide-ranging "abatement" of rent that the Debtor seeks from Evergreen.

3.      The Debtor's attempt to resort to the force majeure clause in the Lease fails for two primary reasons: first, the Debtor has not been "prevented" from performance under the Lease as a matter of fact; and second, the Debtor's business decisions regarding operations are absolutely within its control, and are contributing causes of the Debtor's losses.

4.      The only thing that the pandemic and governmental action has "prevented" is the full operation of the Debtor's restaurant in accordance with the Debtor's chosen business model. It cannot be disputed that the Debtors are open and operating in the Premises and earning revenue. Accordingly, the Debtors' performance  under the Lease, i.e., by the payment of rent to Evergreen, has not been prevented by the pandemic and government orders, and the objective, undisputed facts are contrary to the Debtors' assertions that they have been prevented from performance under the Lease.  .

5.      Although the Debtor certainly did not cause and cannot control the COVID-19 pandemic or any government orders, the Debtor's business decisions — choices exclusively within

its control — are the contributing causes of its decreased revenue and rent woes.  Had the Debtor been positioned differently in the marketplace, or had it fashioned contingency plans to adapt more rapidly to accommodate government regulations and consumer preferences at the outset of the pandemic, perhaps it would have fared better thus far.  The Lease does not afford the Debtor relief, though, and Evergreen should not be made an involuntary guarantor, or *de facto* partner in the success or failure of the Debtor's chosen business model.

6.      Beyond that, Evergreen is entitled to judgment declaring that the Debtor expressly waived any and all claims for relief premised on the operation of any business at all. The Lease is clear that the Debtor's obligations are not contingent on the operation of a business at this location, and parties expressly and mutually waived all rights premised on the operation of any business. That the Debtor's chosen form of business is now suffering is certainly unfortunate, but it is not grounds for ignoring or rewriting the Lease to give the Debtor relief that it affirmatively waived years ago.  More significantly, the Debtor and Evergreen entered into a settlement agreement before the Petition Date to resolve an unlawful detainer action that Evergreen commenced well after the onset of the COVID-19 pandemic, and the parties expressly waived and released any claims related to that action.  The force majeure clause in this Lease thus cannot now be invoked as a matter of law under these undisputed facts, and Evergreen is entitled to judgment declaring that the force majeure provision of the Lease does not apply given the Debtor's waivers.

7.      While the Debtor's rights and remedies are circumscribed by Section 365 of the Bankruptcy Code otherwise in these chapter 11 cases; the Lease cannot be expanded to "abate" any rent, including that already paid by the Debtor pre- and post-petition.

## STATEMENT OF FACTS

On or about November 26, 2003, Evergreen, as lessor, and the Debtor, as lessee, entered into the Lease for real property in Gloucester, Virginia. Kubicki Declaration, ¶ 5.  The Lease is

<u>Exhibit A</u> to the *Appendix of Exhibits in Support of Debtor's Motion for Partial Summary Judgment Regarding First Claim for Relief Asserted in Complaint for Declaratory Relief* [D.I. 7] (the "<u>Debtor's Appendix</u>").

The Lease is for property then known as "Outparcel 3, consisting of approximately 1.6 acres of land" located in the "Fox Mill Center" development. *Id.* at ¶ 6.  At the time of the Lease, no building existed on Outparcel 3, and Evergreen and the Debtor contemplated that the Debtor would "construct its prototypical 5,800 square foot restaurant building with appurtenant improvements, including but not limited to, sidewalks and landscaping." *Id.* at ¶ 7.

The "Commencement Date" of the Lease was to occur upon the earlier of: (a) completion of the improvements on the property "and the opening to the public for business of a Ruby Tuesday restaurant" or "(b) three hundred (300) days from full execution of [the] Lease." *Id.* at ¶ 8.

Monthly rent is due under the Lease from the Commencement Date forward for the initial twenty (20) year term of the Lease, with options for cancellation or automatic renewal. *Id.* at ¶ 9. The Debtor is also obligated to pay real property taxes under Paragraph 5 of the Lease from the Commencement Date forward. *Id.* at ¶ 10.

Although Evergreen and the Debtor understood that the Debtor would ultimately build and operate a Ruby Tuesday restaurant on the leased property, the parties' rights and obligations under the Lease were not, and are not, contingent on the final construction of the restaurant building, or operation of any business.

Paragraph 13 of the Lease provides, among other things, that: "[n]othing contained herein shall require [the Debtor] to continuously operate any business on the Leased Premises.  Further, the parties hereby expressly waive any law or the like which would require continuous operation of a business from the Leased Premises."  Lease, ¶ 13.  Paragraph 13 of the Lease further provides,

among other things, that the Debtor "may close the business on the Leased Premises provided it continues to pay all rental obligations set forth in Lease." *Id.*

Under Paragraph 32 of the Lease, entitled "Force Majeure," Evergreen and/or the Debtor "shall be excused for the period of any delay and shall not be deemed in default with respect to the performance of any of the terms, covenants, and conditions of this Lease when prevented from doing so by cause or causes beyond the Lessor's and/or [the Debtor's] control . . . ." Lease, ¶ 32.

The Debtor performed and paid rent to Evergreen and taxes due under the Lease through March 2020. Kubicki Declaration, ¶ 11.

On or about June 5, 2020, Evergreen sent an initial default notice to the Debtor premised on the Debtor's failure to pay rent for April, May, and June 2020 totaling $32,799.99. *Id.* at ¶ 12. On or about July 17, 2020, Evergreen sent a second default notice to the Debtor premised on the Debtor's failure to pay real property taxes of $3,627.76 due under the Lease, which were payable to Gloucester County, Virginia as of June 30, 2020, and reiterating the demand for unpaid rent including July, 2020 in the total amount of $43,733.32. *Id.* at ¶ 13.  On or about July 27, 2020, Evergreen commenced an unlawful detainer action against the Debtor in Gloucester County, Virginia, seeking among other things, recovery of the unpaid rent for April, May, June, and July 2020, and real property taxes of $3,627.76. *Id.* at ¶ 14.

Before filing its voluntary chapter 11 case with this Court on October 7, 2020 (the "Petition Date"), in August 2020, the Debtor and Evergreen entered into a Settlement Agreement and Release of Claims to compromise the unlawful detainer action (the "Settlement Agreement"). *Id.* at ¶ 15. A true and correct copy of the Settlement Agreement is attached to the Kubicki Declaration as Exhibit 1-A.

Under the Settlement Agreement, the Debtor and Evergreen intended to:

> to settle and compromise any and all prior and existing disputes, claims, and controversies between the parties related to the facts alleged in the Unlawful Detainer, without any future cost and expense of litigation, and to bar any and all future disputes, claims, and controversies between the parties to this Agreement and of the above-mentioned litigation which may arise out of any facts or events, known or unknown, that have occurred at any time up to the execution of this Agreement.

*See id.* at Recital D and ¶ 10.

The Debtor paid Evergreen $60,014.41 as required by the Settlement Agreement, and Evergreen dismissed the unlawful detainer action without prejudice. Kubicki Declaration, ¶ 16. Despite the COVID-19 pandemic and the entry of certain government orders in Virginia in response to the pandemic, as of the Petition Date, the Debtor had paid all base rent due under the Lease for August, September, and October 2020. *Id.* at ¶ 17. As of the Petition Date, the Debtor was current in payments due under the Lease. *Id.* at ¶ 18.

After the Petition Date, the Debtor failed to pay the rent due under the Lease for November or December 2020, in an amount of $21,966.66, exclusive of late charges, interest, or other fees accruing, and failed to pay real estate taxes due totaling $3,627.76. *Id.* at ¶ 19.[1] On or about January 4, 2021, the Debtor paid rent under the Lease for January, 2021, in the increased amount of $12,593.33. *Id.* at ¶ 20.

## ARGUMENT AND AUTHORITY

The standards governing summary judgment under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, are familiar: "courts look to

---

[1] While Debtor's obligation to timely perform any monetary obligations arising under the Lease during the first 60-days of the Debtor's bankruptcy was extended through and including December 6, 2020, pursuant to this Court's *Interim Order Extending the Debtors' Performance of Obligations Under Unexpired Lease of Nonresidential Real Property Pursuant to Section 365(d)(3) of the Bankruptcy Code* [D.I. 180] (the "Extension Order"), which Extension Order was entered on a final basis on November 30, 2020 [D.I. 620], the Extension Order expired by its terms on December 6, 2020. Notwithstanding, to date, the Debtors still have failed to pay the rent due under the Lease for November and December 2020.

whether the record demonstrates 'a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.'" *In re Allied Sys. Holdings*, 556 B.R. 581, 591 (D. Del. 2016) (quoting *Saldana v. Kmart Cor*p., 260 F.3d 228, 232, 43 V.I. 361 (3d Cir. 2001)).

"A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law. . . . [The Court] must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id*. (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, (1986) and *Gray v. York Newspapers, Inc*., 957 F.2d 1070, 1078 (3d Cir. 1992)).

The Court faces "a conceptually difficult task" in assessing summary judgment based on contract interpretation. *Id*. at 592 (quoting *World-Wide Rights Ltd. Partnership v. Combe Inc*., 955 F.2d 242, 245 (4th Cir. 1992). The Court must first decide whether the agreement is "ambiguous or unambiguous on its face" and, if "the contract is unambiguous on the dispositive issue, [the Court] may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Id*. (quoting *World-Wide Rights*, 955 F.2d at 245).

The Lease in this case is unambiguous on its face; under the undisputed facts, Evergreen is entitled to judgment as a matter of law that the force majeure provision has no application, and that the parties affirmatively waived all respective rights based on the operation of any business at the Leased Premises. Moreover, the Debtor's waiver of any claims related to force majeure is evident in the parties' Settlement Agreement, which contemplated a full and complete release of any and all claims arising before and related to the unlawful detainer action. Kubicki Declaration, ¶¶ 15–16.

7

A.    **The Force Majeure Provision of the Lease Does Not and Cannot Apply to Abate Rent**

Under Virginia law, a lease is to be interpreted to give effect to all provisions, just as any contract. *See Brand Distributors, Inc. v. Insurance Co. of N. Am.*, 532 F.2d 352, 358 n.5 (4th Cir. 1976) (citing *Carpenter v. Gate City*, 40 S.E.2d 268 (Va. 1946)). If the lease agreement is plain and unambiguous, the rights of the parties will be determined from the plain language that the parties used. *See Harris v. Woodrum*, 350 S.E.2d 667, 669 (Va. Ct. App. 1986); *see also J. W. Fortune, Inc. v. McLean Square Assocs., G.P. (In re J. W. Fortune, Inc.)*, No. 98-115, 1999 U.S. App. LEXIS 2397 at *14 (4th Cir. Feb. 17, 1999) ("Under Virginia law, we must . . . interpret the plain meaning of each term of the lease while giving effect to all portions of the lease agreement.").

The Supreme Court of Virginia has consistently held that:

> "[t]he pole star for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used . . . . It is the court's duty to declare what the instrument itself says it says." *Ames v. American Nat. Bank*, 163 Va. 1, 38, 176 S.E. 204, 216 (1934). "Where language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning." *Great Falls Hardware Co. of Reston v. South Lakes Village Center Assocs., L.P.*, 238 Va. 123, 125, 380 S.E.2d 642, 643, 5 Va. Law Rep. 2832 (1989).

*Virginia Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 618 S.E.2d 323, 326 (Va. 2005).

Fundamentally, "[a] force majeure clause is not intended to buffer a party against the normal risks of a contract." *Langham-Hill Petroleum, Inc. v. Southern Fuels Co*., 813 F.2d 1327, 1330 (4th Cir. 1987) (quoting *Northern Indiana Public Service Company v. Carbon County Coal Co.*, 799 F.2d 265, 275 (7th Cir. 1986)).  A force majeure clause cannot be "interpreted to excuse [a party] from the consequences of the risk he [or she] expressly assumed" in a contract, or where it nullifies a central term of the parties' agreement.  *Id.*

1.    __Neither the COVID-19 Pandemic Nor Any Government Regulation Has Prevented the Debtor's Performance Under the Lease as a Matter of Fact__

Paragraph 32 of the Evergreen Lease operates to excuse a party only for "the period of any delay [in] … the performance of any of the terms, covenants, and conditions of this Lease when prevented from so doing by cause or causes beyond the Lessor's and/or [the Debtor's] control . . . ."  Conspicuously absent from the Debtor's Opening Brief is any clear assertion that it — as a matter of fact — has been "prevented" from paying rent to Evergreen under the Lease.  That omission is likely of necessity given that the Debtor *has performed* by paying rent to Evergreen both before and after the Petition Date (with the exception of rent for November and December, 2020, which the Court deferred), notwithstanding various governmental regulations implemented to address the COVID-19 pandemic.  *See* Kubicki Declaration, ¶¶ 14–17, 19–20.

The Debtor was current in base rent to Evergreen under the Lease as of the Petition Date, and had paid real property taxes. *Id.* at ¶¶ 17–20. The Debtor has also paid a portion of rent due post-petition, most recently this month, and is in arrears only for the post-petition months of November and December, 2020 (which the Court deferred in the Debtor's bankruptcy case) and for real property taxes due in December, 2020.  *Id.* at ¶¶ 20.

To "prevent" means "'[t]o stop from happening,'" or at most, "'to hinder or impede.'"  *Bmg Rights Mgmt. (US) LLC v. Cox Communs., Inc*., 199 F. Supp. 3d 958, 995 (E.D. Va. 2016) (quoting Black's Law Dictionary (10th ed. 2014)).  And "'performance' is commonly understood to mean '[t]he successful completion of a contractual duty' . . . ." *Standard Pac. of the Carolinas, LLC v. Amerisure Ins. Co.*, 500 Fed. Appx. 237, 240 (4th Cir. 2012) (quoting Black's Law Dictionary 1252 (9th ed. 2009)).

It is clear from the Debtor's Opening Brief and supporting Declaration of Shawn Lederman (the "Lederman Declaration"), that the COVID-19 pandemic and government regulations, at most,

have only truly *prevented* one thing:  full operation of the Debtor's business in accordance with its own business model.

To be sure, the government regulations continue to restrict conduct that the Debtor's business model is based on: *to wit*, in-person dining in large groups.  Those restrictions may have had a significant deleterious effect on the Debtor's revenue, but they do not preclude operation of the Debtor's business outright, and have not "prevented" the Debtor's performance to the extent suggested by the Debtor given its actual payment of rent to Evergreen. Kubicki Declaration, ¶¶ 16, 20. Even under the strictest of the government orders since the COVID-19 pandemic began last year, the Debtor has been within its rights to operate, but has been simply forced to confront and "streamline" its own business model, which by design "is nearly fully based on in-house dining." Opening Brief, ¶ 16; Lederman Declaration, ¶ 3.

The Debtor's latest monthly operating reports likewise reflect that the Debtor has not even been prevented — whether as a function of the COVID-19 pandemic or any government regulations — from performance under its leases, or prevented from operating since the Petition Date. *See In re RTI Holdings, Inc*., Case No. 20-12456, [D.I. 792], p. 10.  Instead, the Debtor has made affirmative business decisions as to which of its landlords to pay from its business revenue, government assistance payments, and other cash sources.

Absent any facts demonstrating that the Debtor has been affirmatively prevented from performance, *i.e.*, prevented from paying rent to Evergreen under the Lease, the force majeure clause simply has no application as a matter of law.

10

2.    **The Debtor's Business Operations and Chosen Business Model Are Entirely Within the Debtor's Control and Are at Least a Contributing Cause, if not the Proximate Cause of the Debtor's Lost Revenue**

There is no doubt that the Debtor has suffered a dramatic decline in sales during the COVID-19 pandemic, but the pandemic and the resulting government restrictions are not the sole "cause or causes" of the Debtor's losses. Those losses have been caused by at least two choices entirely within the Debtor's control: first, to operate a business at the Leased Premises at all, which is not a requirement under the Lease; and second, to operate its business heavily weighted toward dining room and "brand differentiat[ing]" self-service dining. Lederman Declaration, ¶ 4.

The Debtor concedes that its business model, by design, "is nearly fully based on in-house dining." Opening Brief, ¶ 16; Lederman Declaration, ¶ 3. The Debtor is likewise in exclusive control of pursing a business that is, by choice, focused on the so-called "Garden Bar," which is its "signature feature and brand differentiator." Lederman Declaration, ¶ 4. Thus, the unfortunate decrease in the Debtor's revenue since the pandemic stem, in large part, from "cause or causes" well-within the exclusive control of the Debtor itself. *See, e.g., Rastek Constr. & Dev. Corp. v. Gen. Land Commer. Co., LLC*, 806 S.E.2d 740, 748 (Va. 2017) (citing *Haass & Broyles Excavators, Inc. v. Ramey Bros Excavating*, 355 S.E.2d 312, 315 (Va. 1987) (explaining contract damages that "are attributable to some other intervening cause . . . cannot be allowed'")).

B.    **The Debtor and Evergreen Mutually Waived Any Rights Premised on Operation of a Business Under the Lease and the Settlement Agreement**

Despite the Debtor's express waiver of "any law or the like which would require continuous operation of a business from the Leased Premises," the Debtor now argues that its obligation to pay rent is somehow contingent on successful operation of a business in accordance with its own chosen business model. The Lease plainly and clearly allocates the risk of any non-operation of a business to the Debtor — not to Evergreen.

It is beyond cavil that "a party may waive by contract any right conferred by law or contract." *Gordonsville Energy, L.P. v, Virginia Elec. & Power Co*., 512 S.E. 2d 811, 818 (Va. 1999). "Two elements are necessary to establish waiver: 'knowledge of the facts basic to the exercise of the right and the intent to relinquish that right.'" *Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv.*, 595 S.E. 2d 1, 6 (Va. 2004) (quoting *Employers Commercial Union Ins. Co. of America v. Great American Ins. Co*., 200 S.E. 2d 560, 562 (Va. 1973). "If the party being charged with relinquishment of a right had knowledge of the right and intended to waive it, the waiver will be enforced." *Gordonsville Energy*, 512 S.E.2d at 818.

Reading the Lease as a whole, as required under applicable law (*Brand Distributors, Inc.,* 532 F.2d at 358 n.5), it is clear that the parties understood the risk associated with operating a business at the leased premises and expressly relinquished any "law or the like" that would require it.  Indeed, the Lease commenced and rent became due whether or not the Debtor's building was constructed, and whether or not the Debtor's business was operating at all. Kubicki Declaration, ¶¶ 7–10.  Where the parties have recognized and allocated risks as they have in this Lease, a force majeure clause cannot supplant those terms. *See In re Westinghouse Elec. Corp. Uranium Contracts Litigation,* 517 F. Supp. 440, 459 (E.D. Va. 1981) (force majeure clause inapt where parties had allocated risk in contract).

Under the Settlement Agreement, the parties expressly intended:

> to settle and compromise any and all prior and existing disputes, claims, and controversies between the parties related to the facts alleged in the Unlawful Detainer, without any future cost and expense of litigation, and to bar any and all future disputes, claims, and controversies between the parties to this Agreement and of the above-mentioned litigation which may arise out of any facts or events, known or unknown, that have occurred at any time up to the execution of this Agreement.

Kubicki Declaration, <u>Exhibit 1-A</u>. Although the foregoing language appears in the recitals of the Settlement Agreement, the parties expressly incorporated those recitals by reference in Paragraph 10. See *id.* at Recital D and ¶ 10.

If the Debtor believed it had force majeure defenses to raise, it could have and should have raised them in the unlawful detainer action. Instead, the Debtor entered into the Settlement Agreement and affirmatively waived any and all claims (at least as to any unperformed obligations under the Lease up to that point in time) against Evergreen. Kubicki Declaration, ¶¶ 15–16.

**C.    Even if the COVID-19 Pandemic Constitutes an "Act of God" Under the Lease, It Has Not Prevented Debtor's Performance, and it is Not the Sole or Proximate Cause of Debtor's Business Distress**

For largely the same reasons that the force majeure clause is inapplicable to the Government Regulations, even if COVID-19 pandemic were deemed an "act of God" for purposes of the Lease, the pandemic itself has not "prevented" the Debtor's performance as a factual matter. At most, what the pandemic and attendant regulation have prevented is full operation of the Debtor's business consistent with its own financial and branding choices in the restaurant market. And those business choices are within the exclusive control of the Debtor itself.

In light of the enforceable, mutual waiver in the Lease of any "law or the like" associated with the continuous operation of a business from the Leased Premises, and the parties' releases in the Settlement Agreement, resort to characterizing the COVID-19 pandemic as an "act of God" for purposes of invoking the force majeure clause is similarly unavailing. *See Westinghouse Elec. Corp.,* 517 F. Supp. at 459.

**D.    Cases Cited By the Debtor Applying Force Majeure Are Inapposite**

The cases cited by the Debtor as authority to invoke force majeure provisions to abate rent obligations under a lease are inapposite to the facts of this case. *See In re Hitz Rest, Grp.*, 616 B.R.

374 (Bankr. N.D. Ill, 2020); *In re CEC Entertainment, Inc.*, Case No. 20-33163 (Bankr. S.D. Tex.); *CEC Entm't, Inc.*, 2020 Bankr. LEXIS 3493 (Bankr. S.D. Tex. Dec. 14, 2020).

The Debtor's reliance on *Hitz* is misplaced. In *Hitz*, the court concluded that the debtor, Hitz Restaurant Group ("Hitz") was partially excused from rent payments, when after filing for bankruptcy on February 24, 2020, Hitz "failed to pay any post-petition rent *at all*." *Hitz,* 616 B.R. at 380 (emphasis added). Hitz argued that the government restrictions were "the proximate cause of its *inability* to generate revenue and *pay rent*." *Id.* at 378 (emphasis added).  In *Hitz* the debtor did not argue that it was unable to pay rent due to a force majeure event, while having subsequently made post-petition rent payments as the Debtor has here, albeit sporadically.  Unlike Hitz, the Debtor, by paying January's post-petition rent, has demonstrated that it has not been prevented from paying rent. Kubicki Declaration, ¶ 20.

The Debtor's reliance on the bench ruling of the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas, permitting a partial reduction of rent for a lease in *In re CEC Entertainment, Inc.*, Case No. 20-33163 (Bankr. S.D. Tex. Sept. 11, 2020) is also distinguishable.  The court expressly noted that, for the lease for which partial reduction was permitted, the lease at issue "requires [the debtor] to operate both a restaurant and an entertainment center, not one or the other. They can't do that right now. And because they can't do that right now, I think the evidence is undisputed that the force majeure clause is invoked."  *See* Transcript of Hearing Exhibit C to the Debtor's Appendix, p. 76. The Lease here does not require the Debtor to operate a restaurant or even any business at the Leased Premises, contrary to the lease in *CEC Entertainment*.

Moreover, in *In re CEC Entertainment, Inc.*, 2020 Bankr. LEXIS 3493 (Bankr. S.D. Tex. Dec. 14, 2020), the United States Bankruptcy Court for the Southern District of Texas held that

the same debtor, CEC Entertainment Inc. ("CEC"), was *not* entitled to a reduction or abatement of rent obligations under certain leases because the Bankruptcy Code and the leases at issue would not permit the court to alter the lease provisions for rent.  The court explained that, in the absence of state law or provisions in the lease to abate or reduce rent, that "the Bankruptcy Code does not permit the Court to equitably alter CEC's state law rent obligations." *Id.* at *14.  The Debtor has argued that this decision is distinguished from the facts here, because the language of the force majeure provisions expressly exempted the payment of rent, and therefore allocated the risk to the debtor. However, this decision *is* applicable to the facts at issue here because the Bankruptcy Code and the force majeure provision of the Lease do not provide the Debtor with the ability to alter their rent obligations and seek an abatement or reduction of rent.  The Lease as a whole is not premised on the operation of any business; even if the Debtor were to cease operating entirely, its obligation to pay rent is expressly preserved.  *See* Lease, ¶ 13.

Additionally, recent decisions from New York are instructive, having held that it is not the role of the court to re-write a contract in favor of a tenant who cannot pay rent because of the COVID-19 pandemic. *See, e.g., ITS Soho LLC v. 598 Broadway Realty Assoc. Inc.*, 2020 N.Y. Misc. LEXIS 10856 (N.Y. Sup. Ct. Dec. 22, 2020) (granting landlord's motion for summary judgment and holding that the executive orders issued in response to COVID-19 did not suspend a commercial tenant's obligation to pay rent); *Cab Bedford LLC v. Equinox Bedford Ave, Inc.,* 2020 N.Y. Misc. LEXIS 10861 (N.Y. Sup. Ct. Dec. 22, 2020) (granting landlord's motion to dismiss on the grounds that a temporary shutdown of the tenant's gym did not constitute a substantial frustration of the lease).

**E.**    **Wholesale "Abatement" of Rent Paid and Payable Under the Evergreen Lease is Contrary to Section 365, Applicable Law, and the Lease Language**

Although the Debtor does not state it explicitly, the implication of the requested relief in the Complaint and the Motion is that the force majeure provisions, if applicable, would relieve and excuse the Debtor from current and past rent obligations under the Lease.  As such, disgorgement of, or setoff against, rent already paid to Evergreen prepetition and post-petition is extraordinary relief well outside the bounds of what Section 365 and applicable law permits. *See, e.g., Coker Int'l, Inc. v. Burlington Industries, Inc*., No. 90-2492, 1991 U.S. App. LEXIS 11794, at *11 (4th Cir. June 11, 1991) (even where a force majeure clause might apply, "its only effect would be to suspend" performance, and cannot "insure the refund" of non-refundable sums paid pursuant to contract).

Under Bankruptcy Code Section 365, the Debtor "must fulfill any obligation that arises under a non-residential lease after the filing of the bankruptcy petition but before either assumption or rejection occurs." *In re Pac-W. Telecomm, Inc.*, 377 B.R. 119, 123 (Bankr. D. Del. 2007).  For purposes of Section 365(d)(3) of the Bankruptcy Code, an "obligation" is "one where the debtor 'is legally required to perform under the terms of the lease and . . . [which] arises when one becomes legally obligated to perform.'" *In re Fresh-G Rest. Intermediate Holding, LLC*, 580 B.R. 103, 114 (Bankr. D. Del. 2017) (quoting *In re Montgomery Ward Holding Corp*., 268 F.3d 205, 209 (3d Cir. 2001)).  The Debtor here wants to avoid those obligations under the Bankruptcy Code under the guise of contractual provisions in the Lease that do not apply.

It is fundamental that, if the Debtor wants to assume the Lease with Evergreen, it must cure all defaults under the Lease, and compensate the Evergreen for its actual pecuniary losses as a result of those defaults.  *See* 11 U.S.C. § 365(b)(1)(A) and (B); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease

provided it cured all pre-petition defaults).  The Debtor must assume the Lease *cum onere* — subject to all existing burdens — and cannot pick and choose favorable terms. *In re Wash. Capital Aviation & Leasing,* 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). Evergreen is entitled to the full benefit of the bargain under the Lease if assumed. *See Matter of Superior Toy and Mfg. Co., Inc.*, 78 F.3d 1169 (7th Cir. 1996).

The plain, unambiguous language of the Lease's force majeure provision permits performance to be excused only for a period of *delay*. Lease, ¶ 32. If a force majeure event is recognized, the language of the Lease does *not* relieve or permanently excuse the Debtor of its performance obligations under the Lease. *Id.* The Debtor, in seeking to be excused from rent payments under the force majeure clause of the lease, ignores the plain language, which provides only an excuse for the period of any delay, and thus, seeks to engraft wholesale "abatement" on its own accord.  In *Coker International, Inc. v. Burlington Industries, Inc*., the United States Court of Appeals for the Fourth Circuit, in discussing a force majeure provision which also only permitted performance to be delayed, held that if the force majeure clause at issue applied, it would only permit performance to be suspended. *Coker*, U.S. App. LEXIS 11794, at *10–11.  The plain language of the Lease makes clear that the force majeure clause, if applicable, does not permit performance and payment under the lease to be excused or "abated." Rather, performance under the Lease can only be *delayed*, at best. Lease, ¶ 32.  The only provision in the Lease that countenances "abatement" of rent is ¶ 17(D), which would allow the Debtor to abate rent if the entire development were closed by the Lessor.  Lease, ¶ 17(D).  Of course, that has not occurred here.

The Debtor presupposes that abatement of rent already paid and payable to Evergreen is an appropriate remedy in the Lease in claiming that abatement is not contrary to Section 365.  But

the Debtor's argument is premised on a misinterpretation of the Lease under these facts, and it ignores plain language of the force majeure provision and the parties' clear waiver of any rights associated with operation of a business at the Leased Premises, both in the Lease and in the Settlement Agreement.  As such, Section 365 limits what the Debtor and this Court may do — assume and cure all defaults, or reject the Evergreen Lease and move on.

## **CONCLUSION**

Based on the foregoing, Evergreen respectfully requests that the Court enter orders and judgment denying the Debtor's Motion for Partial Summary Judgment Regarding First Claim for Relief Asserted in Complaint for Declaratory Relief, granting summary judgment in favor of Evergreen, declaring that the force majeure provisions of the Lease cannot apply as a matter of law [or fact]; and for other such relief as deemed appropriate.

Respectfully submitted,

/s/ Leslie C. Heilman
Leslie C. Heilman, Esq. (DE Bar No. 4716)
Laurel D. Roglen, Esq. (DE Bar No. 5759)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone:  (302) 252-4465
Facsimile:  (302) 252-4466
E-mail: heilmanl@ballardspahr.com
          roglenl@ballardspahr.com

          and

Brian D. Huben (CA Bar No. 134354)
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone:  (424) 204-4400
Facsimile: (424) 204-4350
E-mail: hubenb@ballardspahr.com

          and

Theodore J. Hartl (CO Bar No. 32409)
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO  80202-5596
Telephone:  (303) 292-2400
Facsimile:  (303) 296-3956
E-mail: hartlt@ballardspahr.com

Dated:  January 15, 2021          *Attorneys for the Defendant-Counterclaimant*
Wilmington, Delaware          *Evergreen Development Company, L.L.C.*

19